No. 27,108

THE FIRST CHURCH OF CHRIST SCIENTIST, *Appellee*, v. THE ÆTNA BUILDING AND LOAN ASSOCIATION, *Appellant*.

SYLLABUS BY THE COURT.

BANKS AND BANKING—*Presentation and Acceptance of Check as Constituting Payment—Act of Agent as Binding on Principal.* The act of an agent having authority of his principal to sell stock and receive payment in money therefor, who makes a sale and receives from the purchaser a check upon a bank in which the purchaser has a sufficient deposit to meet the check, and the agent at once presents the check, which is accepted, and the amount of it charged to the account of the purchaser and at the same time credited to the account of the agent, the transaction is deemed to be complete and the transfer so made the equivalent of an actual payment in money which is binding upon the principal.

Appeal from Shawnee district court, division No. 3; OTIS E. HUNGATE, judge. Opinion filed February 12, 1927. Affirmed.

---

Banks and Banking, 7 C. J. p. 636 n. 31. Payment, 30 Cyc. pp. 1207 n. 96, 1209 n. 2; 10 L. R. A. n. s. 537; 35 L. R. A. n. s. 35; 21 R. C. L. 69.

*John S. Dean* and *John S. Dean, Jr.*, both of Topeka, for the appellant.

*A. E. Crane, B. F. Messick, A. Harry Crane*, all of Topeka, and *Joe Rolston*, of Burlington, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The First Church of Christ Scientist sued the Ætna Building and Loan Association to recover $1,500 which plaintiff claimed to have advanced in payment of five shares of the capital stock of the defendant company purchased from the defendant and which it had refused to issue and deliver to plaintiff. At the close of plaintiff's evidence the court sustained a demurrer to the evidence and gave judgment for defendant. On the motion for a new trial the court set aside the directed verdict and granted a new trial. From the order granting the new trial, the defendant appeals.

It appears that the defendant had a local agency at Burlington, named the Weaver-Hitchens Loan and Investment Company, and that the plaintiff through its treasurer made an application to the agency for the purchase of the stock in the defendant company. The application was accepted by the agency, and as a payment for the stock the plaintiff gave its check for $1,500 and turned over its bank book of a savings account of plaintiff in a bank which showed a sufficient deposit to meet the check. In the application it was stated that "payment of the entrance fee, $12.50, nonreturnable, and $1,487.50 in full prepayment of all dues, has been made by me and accompanies this application." On that day the sum of $1,500 was charged against plaintiff's account in the bank and a credit for the same amount was made in the account of the defendant's agency. The agency at once forwarded the application with its own check for the amount paid to the defendant's office in Topeka. Before the check reached the bank in regular course of collection the bank failed and when the check was presented payment was refused. Learning of the dishonor of the check, the company refused to issue the stock or to return the money therefor and this action followed.

There was no error in granting a new trial. The main question in the case was, did the tender of the check and bank book and the acceptance of the same by the loan and investment company, together with the transfer on the books of the bank, charging the plaintiff's account with the amount of the check and crediting the

same to the account of the loan and investment company, amount to a payment of cash to the latter? It was alleged that the loan and investment company was the duly authorized agent of the defendant to sell stock and to receive applications for that purpose and also to receive the money therefor. In its answer the defendant in effect admitted that the loan and investment company was its authorized agent to sell stock and receive the money therefor, but it added that the agent's action did not bind the defendant to issue stock upon a sale made "except for money actually paid into the hands of said agents." There is, therefore, no question but that the loan and investment company, agents of defendant, had authority to sell the stock of defendant and to receive money as payment for it. The check was received by the agents, together with the bank book showing sufficient funds of plaintiff on deposit to meet the check. It was indorsed by them and presented to the bank where the amount was transferred and placed to their credit, and at the same time charged to the account of the plaintiff. That closed the transaction and we think was the equivalent of a payment in money. When the credit was given to the agents, the indebtedness of the bank to them became definitely fixed and they could have then drawn the money placed to their credit in the bank. While the delivery of a check of itself is not payment of an obligation or to be regarded as a payment in money, it has been said that "a credit given for the amount of the check by the bank upon which it is drawn is equivalent to and will be treated as a payment of the check. It is the same as if the money had been paid over the counter on the check and then immediately paid back again to the account or for the use for which the credit is given." (2 Morse on Banks and Banking, § 451.) In *National Bank v. Burkhardt,* 100 U. S. 686, the court quoted the following excerpt from an authority stating that it was a sound exposition of the law upon the subject and rests upon a solid basis of reason:

"But if at the time the holder hands in the check he demands to have it placed to his credit, and is informed that it shall be done, or if he holds any other species of conversation which practically amounts to demanding and receiving a promise of a transfer of credit, as equivalent to an actual payment, the effect will be the same as if he had received his money in cash, and the bank's indebtedness to him for the amount will be equally fixed and irrevocable." (p. 689.)

Other authorities having a bearing upon the question are *Noble v. Doughten,* 72 Kan. 336, 83 Pac. 1048; *Tire & Rubber Co. v. Bank,*

109 Kan. 772, 204 Pac. 992; *Kesl v. Bank,* 109 Kan. 776, 204 Pac. 994; *Am. Nat'l Bank v. Miller,* 229 U. S. 517; *American Exchange Nat'l Bank v. Gregg,* 138 Ill. 596; *Jacobson v. Bentzler,* 127 Wis. 566; *Oddie v. the Nat'l City Bank,* 45 N. Y. 735; 21 R. C. L. 69; *Montgomery County v. Cochran,* 126 Fed. 456.

We are of opinion that the transaction mentioned was substantially the same as if the agents of defendant had received a cash payment for the stock sold, and since the agents had authority to sell stock and receive payment therefor in money, the trial court under the evidence was justified in setting aside its ruling directing a verdict in favor of defendant and in granting a new trial.

The judgment is affirmed.