## EL RENO MILL & ELEVATOR CO. v. SHULL, State Bank Com'r, et al.

No. 23430.   March 6, 1934.

Miley, Hoffman, Williams, France & Johnson, for plaintiff in error.

M. B. Cope, W. C. Austin, and Robert B. Harbison, for defendants in error.

WELCH, J.   This is an appeal from the district court of Jackson county, Okla., wherein El Reno Mill & Elevator Company, a corporation, is plaintiff, and C. G. Shull, State Bank Commissioner, and J. R. Symcox, liquidating agent of Citizens State Bank, Altus, Okla., are defendants. The parties appear in this court as plaintiff and defendants, as they appeared in the trial court.

Plaintiff's suit was brought for the purpose of establishing a preferred claim to funds held by the defendants as assets of the defunct Citizens State Bank of Altus. The cause was tried to the court, resulting in a judgment denying plaintiff's claim for preference, but allowing the same as a general claim against the assets of the insolvent bank.

There is little, if any, conflict in the testimony, which may be briefly stated as follows: On January 24, 1930, plaintiff drew a draft upon the Altus Bakery for $624.75, and on the same date drew a draft upon the Oklahoma Grain & Fuel Company of Altus for $417. These drafts covered shipments of flour to the two firms upon which they were drawn, and to them were attached bills of lading and letters of instructions. The following indorsements appeared on the back of each of the drafts:

"Pay to Citizens National Bank, El Reno, Oklahoma, for collection in cash only and remittance only to the El Reno Mill & Elevator Co. without depositing or intermingling with the bank's funds.

"El Reno Mill and Elevator Co.
"By E. D. Lay, Traffic Manager.

"Pay to the order of any bank, banker or trust company all prior indorsements guaranteed Jan. 25, 1930.

"Citizens National Bank,
"El Reno, Oklahoma.
"86-66-86-66."

To the drafts was attached the following letter of instructions:

"K. E. Humphrey Flour Dept. H. C. Hicks
"President       Phone L. D. 7 V. P. & G-M.
"Office of El Reno Mill & Elevator Co.,
"El Reno, Oklahoma, Jan. 24, 1930.
"Citizens National Bank, El Reno, Oklahoma.

"Dear Sir:

"We enclose herewith items for collection

in cash only, in remittance only to El Reno Mill & Elevator Co., without depositing or intermingling with the bank's funds. Bill of lading to be delivered only upon payment of draft in cash.

"If not possible to handle strictly on this basis, kindly return.

"Yours truly,

"El Reno Mill & Elevator Co.

"D'fts. No. Whom Drawn Address Amount
"783    Altus Bakery  Altus, Okla.  $624.75
"784    Okla. Grain &
              Fuel Co.      Do.     $417.00
"On Arr. of Car. Orig, B/L Attd.
"Thru Citizens National Bank, Altus, Okla.
"Car No. 156191 RI
"Freight Prepaid $44.46
"Freight Deducted  $ "

These drafts, with bills of lading and letters of instructions attached, were deposited on January 25, 1930, with the Citizens National Bank of El Reno, Okla., the same being included on a regular deposit slip prepared by plaintiff along with other items of deposit, including checks and currency. The managing agent of plaintiff testified that he had an arrangement with the El Reno bank to the effect that collection items deposited by plaintiff would be credited to plaintiff's account, and charged back if not paid, and that plaintiff would pay the bank interest on such items while they were outstanding, and this testimony is not controverted. Plaintiff received credit in its regular checking account with the El Reno bank at the time the two drafts were deposited, and was at liberty to check against the same.

Upon receipt of the two drafts the El Reno bank forwarded the same to the Citizens State Bank of Altus, Okla., with the bank's letter of transmittal. The Citizens State Bank of Altus received the drafts, accepting checks from the two customers in payment of same, delivered the bills of lading and received payments on the two checks on January 29th and 30th. The Citizens State Bank then forwarded direct to plaintiff its draft for the proceeds of the collection. This draft was made payable to the El Reno Mill & Elevator Company, the plaintiff herein. Upon receipt of this draft by plaintiff on February 3rd, it immediately delivered the same to its depository bank in El Reno, according to plaintiff's testimony, to complete the collection. Plaintiff did not indorse the draft which it received from the Citizens State Bank of Altus. Plaintiff's depository bank indorsed the draft and sent the same through the First National Bank & Trust Company of Oklahoma City for collection. Before the draft was paid by the Citizens State Bank of Altus, said last-named bank became insolvent and came into the hands of the State Bank Commissioner for the purpose of liquidation, and the draft was therefore never paid. It is stipulated that the sum of $6,000 in cash came into the hands of the Bank Commissioner, and it was testified that approximately $4,300 in preferred claims had been filed, including that of plaintiff. The El Reno bank charged the drafts back to plaintiff's account on February 5th, and plaintiff paid the bank 5½% interest on the amount from January 25, 1930, to February 5, 1930.

Plaintiff urges its first proposition as follows:

"The judgment is contrary to law, is contrary to the evidence, and the court erred in rendering judgment for defendants in error and in not rendering judgment for plaintiff in error"

—which embraces its assignments of error 3, 4, 5, 6, and 7. In this connection it appears that the question presented is whether title to the funds collected on plaintiff's drafts became vested in the failed bank, thus creating the relation of debtor and creditor between the bank and plaintiff, or whether title to such funds remained in plaintiff, thus establishing the relation of principal and agent. In support of its argument plaintiff quotes the general rules announced in 3 R. C. L., pages 519, 524, 632, and 633. It suggests that this court is committed to the following rule:

"Where commercial paper is deposited and forwarded for collection and remittance, the collecting bank, upon receipt and acceptance thereof, becomes, and after collection remains, the agent of the owner of such paper, and if it sends its draft or cashier's check in remittance and becomes insolvent and such draft or check is not paid, the proceeds of the collection constitute a trust fund, subject to be traced in the hands of the Bank Commissioner"

—citing Hall v. Sullivan, 123 Okla. 233, 253 P. 45; Kansas Flour Mills v. New State Bank, 124 Okla. 185, 256 P. 43; Thomas v. Mothersead, 128 Okla. 157, 261 P. 363; State ex rel. Mothersead v. Excello Feed Milling Co., 131 Okla. 100, 267 P. 833; First State Bank v. O'Bannon, 130 Okla. 206, 266 P. 472; Shull v. Beasley, 149 Okla. 106, 299 P. 149.

In First State Bank v. O'Bannon, supra, the court held in the second paragraph of the syllabus:

"A state bank accepting for collection, drafts expressly marked for collection and remittance, handles such collection as agent, and the proceeds become a trust fund in the hands of the bank, subject to be traced into the hands of the Bank Commissioner who takes over the bank as insolvent."

The defendants agree that the hereinabove quoted rules of law are established in this jurisdiction, and are supported by the cited cases. They maintain, however, that plaintiff never in fact delivered the drafts to the El Reno bank for the purpose of collection, and that the written indorsements placed thereon by the plaintiff and the letters of instructions were ignored by plaintiff and disregarded from the beginning of the transaction, and that the facts and circumstances are such that plaintiff, upon depositing the drafts, parted with title thereto; that the depositor never at any time intended in fact nor did it expect that such written instructions be complied with, and that after their breach by the depository and the collecting bank, the depositor, with full knowledge thereof, acquiesced in their violation and accepted, without objection, a form of remittance which their written instructions prohibited. They say that plaintiff solicited and accepted credit for the two drafts upon the same basis as a cash deposit when it deposited the same in the El Reno bank in its general checking account. We are unable to see how it may be concluded that the fact that the items were included with other items on a regular deposit slip and deposited is inconsistent with the clearly written and expressed intent and instructions of plaintiff to deliver the drafts for collection. The fact that the interest was paid on the amount of such items of deposit until the items were collected is additional reason for concluding that such action is consistent with the expressed written instructions.

Evidence was introduced over plaintiff's objection to the effect that it is a custom of almost universal application that a collecting bank remits the proceeds of such collection by draft or cashier's check, and it is further shown by the testimony of the managing officials of the El Reno bank that when they sent the draft to the Altus bank they did not expect remittance in any form other than by draft or cashier's check. There is no proof, however, to show that plaintiff acquiesced in this custom in the face of its positive written instructions that the collection and transmittal of the funds be handled in a different manner. If we were to hold in this case that plaintiff parted with title to its paper by thus depositing the same, even though proof might show that it was familiar at the time with the general custom, it would be difficult, indeed, for one to be able to handle his collections through a banking institution without the necessity of parting with title to his paper. We are convinced that the owner of commercial paper should be protected in his right to name the terms upon which it is placed in the hands of others.

We do not think the evidence in this case supports the theory that it was plaintiff's intent at the time he placed the items in question with the El Reno bank, that he part with title thereto, or with title to the proceeds thereof.

The suggestion that plaintiff accepted without objection a form of remittance which its written instructions prohibited is, in our opinion, without merit. The testimony is to the effect that the Altus bank sent its draft direct to plaintiff payable to plaintiff's order. Plaintiff had not expected or anticipated this. It immediately delivered the same to the El Reno bank without indorsement so that the collection might be completed. We are at a loss to know what other course plaintiff might have pursued in that regard. This evidence of itself is not sufficient to support the view that plaintiff should be held to have accepted the Altus bank's draft as payment of the proceeds of the collection.

We, therefore, conclude that the judgment of the trial court is contrary to the law and evidence, and the cause is reversed and remanded, with directions to render judgment in favor of the plaintiff establishing his claim as preferred.

CULLISON, V. C. J., and SWINDALL, McNEILL, and BAYLESS, JJ., concur.